SPRING CANYON COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23902, 25743. Promulgated August 2, 1928.

*Charles D. Hamel, Esq.*, and *Benjamin H. Saunders, Esq.*, for the petitioner.

*Arthur H. Murray, Esq.*, for the respondent.

OPINION.

MORRIS: Before passing to the specific question raised it might be well to consider briefly the Workmen's Compensation Act. The compensation provided for in the act is not to be considered in the sense of damages for injuries sustained. It is precisely what the term implies; namely, compensation, pure and simple. *Woodcock* v. *Board of Education* (Utah Supreme Court), 187 Pac. 181. In *Utah Copper Co.* v. *Industrial Commission* (Utah Supreme Court), 193 Pac. 24, the court clearly sets out the purposes of the Act.

The recent history of the enactment of the law in question justifies the court in saying that the recognized and known intent of the legislature was to secure compensation to injured employees, or to their dependents in case of

death, whether such injury or death resulted from the negligence of the employer or was purely accidental. Also it was the intent to secure such compensation without delay, and without the expense and annoyance of a suit at law. An administrative body, to wit, the commission, was created primarily to enable injured employees, or dependents of such employees when death ensues, to obtain such relief without delay, and without having to resort to the uncertainties and expense of litigation.

In order to secure the payment of such compensation the statute provides for three methods, insurance in the state insurance fund, insurance in a stock or mutual association and self insurance, the last named method being the one selected by the petitioner.

An employer selecting the self insurance method is relieved of the payment of premiums to an insurance carrier and is only subjected to the payment of such compensation as may become due its employees under the terms of the Act. If no accident occurs, no payment is required. *Salt Lake City* v. *Industrial Commission* (Utah Supreme Court), 199 Pac. 152. In order, however, to protect injured employees which might be entitled to the benefits of the Act, the Industrial Commission ordered the petitioner to set aside a reserve equal to the premiums it would have to pay if it insured in the State Insurance Fund. It is the net addition to this reserve that occasions the present controversy.

The petitioner contends that the amounts set aside constituted a trust fund and that payments thereto represent ordinary and necessary expenses incurred in its business; that the continuing payments to said fund, being required by law, are deductible as ordinary and necessary expenses in the computation of net taxable income, and that it is an insurance company for the purpose of paying workmen's compensation insurance and is entitled to deduct additions to the fund, as a reserve required by law, in the computation of its net taxable income. The respondent, on the other hand, contends that there is no authority under the revenue acts for such deductions as are contended for by the petitioner; that the amounts set aside by the petitioner are not "required by law to be made within the taxable year to reserve funds"; that the amounts sought to be deducted are not allowable as ordinary and necessary expenses under the provisions of section 234 (a) (1) of the Revenue Acts of 1918 and 1921; and, furthermore, that the fund so set aside, as required by resolution of the Industrial Commission of Utah, is not a trust fund and the net additions thereto are not deductible as ordinary and necessary expenses in the computation of net taxable income.

If the amounts sought to be deducted by the petitioner are deductible at all, authority therefor must be found in subdivisions (a) (1) or (10) of section 234 of the Revenue Acts of 1918 and 1921, which provide (except for slight modifications found in the Act of 1921 not applicable here), as follows:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, * * *

\* \* \* \* \* \* \*

(10) In the case of insurance companies, in addition to the above: (a) The net addition required by law to be made within the taxable year to reserve funds' (including in the case of assessment insurance companies the actual deposit of sums with State or Territorial officers pursuant to law as additions to guarantee or reserve funds) ; and (b) the sums other than dividends paid within the taxable year on policy and annuity contracts.

We have, on several occasions, considered the deductibility of amounts reserved for self insurance, and have uniformly held that said amounts are not deductible. In *Pan-American Hide Co.*, 1 B. T. A. 1249, the taxpayer assumed certain insurance risks itself and charged to its profits for the year 1918 amounts equal to the premiums that would ordinarily be paid to insurance companies on the basis of quoted rates, and it deducted those amounts in the computation of its net taxable income for that year. The Board there, following the reasoning in *William J. Ostheimer*, 1 B. T. A. 18; *Consolidated Asphalt Co.*, 1 B. T. A. 79; and *Uvalde Company*, 1 B. T. A. 932, said:

The taxpayer also urges that it is improper to discriminate between one who pays premiums to an insurer and one who bears his own risk. The difference is one of fact; in the one case the expense of premiums is paid or incurred and in the other it is not. The discrimination, if such it be, is self-imposed. Since the statute does not permit a taxpayer to deduct as an expense an amount which he fears he may some day be called upon to spend, there can be no sanction for such a deduction.

In *L. A. Thompson Scenic Railway*, 2 B. T. A. 664; also *L. A. Thompson Scenic Railway Co.*, 9 B. T. A. 1203, owing to fire hazard and the extraordinary risk involved in the petitioner's business, no insurance company would accept insurance liability on its properties, and during 1919 the taxpayer set aside, out of its income, amounts representing the minimum premium which it would have been obliged to pay if an insurance company would have assumed the risk. The Board, following *Pan-American Hide Co.*, *supra*, said:

It may be conservative accounting to set aside a portion of the income to a fund out of which a fire may be provided against in advance, but deductions permitted by the law in determining the taxable net income present a quite different question. The amount of the reserve does not constitute an ordinary and necessary business expense and is therefore not deductible.

In *Greenville Coal Co.*, 3 B. T. A. 1323, petitioner, prior to 1916, carried liability insurance, but, by reason of a controversy which it had with the insurance company it ceased to do so and in lieu thereof, deposited certain amounts with a trustee as a reserve for liabilities

growing out of accidents to employees. In 1918 it deposited in said reserve $15,838.91, and during that year paid out to injured employees $6,248.67. The taxpayer there deducted the entire amount so deposited in the computation of net income subject to tax, and the respondent disallowed all except the amount actually paid during the year, or $6,248.67, and the Board said in upholding his action, " Such a reserve is not authorized by the Revenue Act of 1918." In *Richmond Light & Railroad Co.*, et al., 4 B. T. A. 91, the petitioner claimed a deduction for reserves set aside for casualties and damages during the fiscal years ended June 30, 1920, and 1921, and the Board upheld the respondent's disallowance of those deductions.

The attitude of this Board with respect to deductions claimed on account of self-insurance is well settled by the foregoing decisions. The petitioner contends, however, that its case is not controlled by the above cases but is on all fours with, and controlled entirely by the decision in *Hibbard, Spencer, Bartlett & Co.*, 5 B. T. A. 464. In that case the taxpayer submitted to its employees a proposition for the establishment of a pension fund, which was accepted by the employees and the taxpayer, and a fund known as " Hibbard, Spencer, Bartlett & Co. Pension Fund " was created. Rules and regulations were promulgated, governing the operation and conduct of said pension fund, in which it was provided that a pension committee of seven should be created, consisting of the president and vice president of the taxpayer, three directors thereof, and two employees; that each employee specified in those regulations should contribute to the said fund a sum equal to 2 per cent of his annual salary, not exceeding $60 per annum, to be deducted quarterly from the payment of such salary, and that the taxpayer should contribute each quarter a sum equal to the aggregate payments by the employees during the same period. The rules and regulations vested in the appointed committee full power and authority to do all acts necessary to carry out the objects of the fund and the question of capacity or incapacity of any employee was entirely within the discretion of the pension committee. The pension fund committee established and maintained a deposit account in the name of " Hibbard, Spencer, Bartlett & Co. Pension Fund," and funds were withdrawn from that account only upon checks signed with the name of that fund. Separate books of account were kept for the pension fund and the general books of the taxpayer in no manner reflected any interest in the fund. The taxpayer there contended that there was a valid trust relationship created between itself and its employees, and that it was thereafter a separate taxable entity, and payments made to it were deductible in the computation of net income as ordinary and necessary expenses of carrying on its business. The Board there, after having concluded from

the facts and circumstances that there was a valid trust, held that the payments made by the taxpayer to the fund were ordinary and necessary expenses of conducting its business.

While the instant case and the *Hibbard, Spencer, Bartlett & Co.* case have many points of similarity, we are constrained to believe that the major points of distinction preclude the adoption of the doctrine laid down therein. There is no evidence in the instant case, as there was in that case, of an agreement, either written or oral, between the petitioner and its employees, looking forward to the establishment of a trust fund, nor can we find from the act of the petitioner in establishing the said fund that there was any intent to create a trust of the amount set aside pursuant to the order of the Industrial Commission of Utah. If a trust was established it must have been by the voluntary action of the petitioner. The only thing required by the Industrial Commission was that a reserve be set aside. The petitioner attaches great importance to that order as proving the creation of a trust and distinguishing this case from the preceding cases of self insurance which have come before us. We can not agree with such a conclusion. The employer is the one against whom jurisdiction must be obtained. The right to compensation arises out of the relation existing between employer and employee and the employer is primarily liable for it. *American Fuel Co.* v. *Industrial Commission* (Utah Supreme Court), 187 Pac. 633. The fact that the Industrial Commission, as a protective measure, directs the establishment of a reserve does not make that fund a trust fund, thus divesting the employer of legal title thereto, nor place it under the control of said commission.

It is true that the amount so reserved was set aside for the exclusive benefit of the employees, if, as, and when casualties in their ranks may occur, and we do not doubt but that the Commission guarded this fund jealously and would have pounced upon the petitioner upon the slightest indication of insolvency or attempt to deplete the fund; but that in our opinion amounts to nothing more than a protective measure and does not establish a trust. It is well settled that before a trust relationship can be created there must have been an intention to create a trust and the donor or settlor must have expressly or impliedly placed in the trustee absolute legal title to the fund beyond all control, and it is essential that there be a separation of the legal and equitable estates therein. Had the petitioner itself, or the custodian of the fund, violated the provisions of the statute or the resolution of the Industrial Commission, the said Commission would no doubt have compelled it to insure its employees either with the State Insurance Fund or through some stock corporation or mutual association authorized by law to transact such business.

We do not believe that the said commission would have sought to impound the fund and have it declared a trust, nor that it would have succeeded in such an attempt, except to the extent that employees who were already injured and whose rights had already arisen under the statute might have been affected.

While the petitioner established a compensation fund and, together with two other coal-mining companies, employed a man in connection with the handling of said fund, and while he organized and set up a complete organization and a system for the carrying out of the objects of the fund, and deposited the sums paid to him in a separate bank account, we find no satisfactory evidence of a separation of the legal and equitable estates in the amounts set aside. Nor are we satisfied that Brown was any more than a mere employee of the petitioner and, therefore, subject to their orders in all matters appertaining to the fund.

In the *Hibbard, Spencer, Bartlett & Co.* case the amount of the pension fund was in no manner reflected in the books of the taxpayer. In the instant case the amount was carried in the balance sheet of the petitioner as an asset, which was offset by a corresponding reserve for workmen's compensation insurance. While we realize that this factor is not in and of itself determinative of the question under consideration, it is one of the circumstances to be considered in reaching a conclusion as to the intention of the parties and the status of their relationship.

While the funds created in both *Hibbard, Spencer, Bartlett & Co.* and the instant case are for the benefit of a class, it is important to note that here the *cestui* who is to benefit by the fund is unknown, and unidentified, and can assert no claim until he has been injured in some manner provided for in the Workmen's Compensation Act. In the *Hibbard, Spencer, Bartlett & Co.* case, however, the *cestui* is definitely ascertained and identified as and when contributions are jointly made to the fund by the employer and employee. The obligation in one case arises upon the employee depositing a certain amount in the fund within a given year, whereas the obligation of the petitioner in the instant case to pay sums to its employees may never arise.

While revocability, as was pointed out in *Hibbard, Spencer, Bartlett & Co., supra,* is not inconsistent with the creation of a valid trust, the power to revoke, vested entirely within the petitioner, which may be exercised by it, should it elect to insure in some other manner, is an important consideration in determining the nature of the fund in question.

Considering all the facts and circumstances, we are of the opinion that the amounts in controversy were not paid to a trust fund and

that the instant case is not controlled by the doctrine of *Hibbard, Spencer, Bartlett & Co., supra.*

A somewhat similar question arose in the case of *Cleveland Railway Co.*, 10 B. T. A. 310, in which the petitioner contended that the amounts which went into the " interest fund " provided for in a city ordinance and which could not be used for the payment of dividends, but only to reduce fares in succeeding years, were ordinary and necessary expenses. We did not agree with that argument and in the course of the opinion used the following language:

\* \* \* The payment that would constitute an expense and, therefore, be deductible, occurs when the fund is used for operating and maintenance costs, and interest charges. There is no return of the fund to the car riders who paid excessive fares, nor is it held in trust to be paid to any one. The most that can be said is that the fares in the succeeding period will be less and a part of the expenses incident to the collection of these fares will be paid out of this interest fund, but until such payments are made or incurred, there has been nothing expensed that would constitute a deduction from gross income. To say that it would be a violation of the ordinance not to raise or lower fares as the amounts which are accumulated in the " interest fund " indicate that such action should be taken, and that therefore the doing of what the ordinance says is an ordinary and necessary expense, would in effect be saying that whatever a taxpayer is required to do in fulfillment of a contract is an ordinary and necessary expense. Admittedly, it was necessary for the petitioner to comply with the ordinance as a condition to its continuing in business under the franchise, but this does not make amounts required to be retained by it for use in a subsequent year or period an expense item and, therefore, a deduction when it has not in fact been expended. Each year must be dealt with as a unit. We can no more say that the amounts retained in this fund for use in a subsequent year's operation are expenses in the year when retained than we can say that the income of the subsequent year should be increased because a part of the expenses were paid from funds which had been accumulated for this purpose in the prior year. \* \* \*

Petitioner further contends that it is an insurance company for the purpose of paying workmen's compensation insurance to its employees and that it is, therefore, entitled to deduct additions to the fund as a reserve required by law as provided for in section 234 (a) (10), *supra.* In order for the petitioner to succeed in this contention we must be able to say that it is an insurance company in the intended sense and, secondly, that the net additions made to the reserve are " required by law." We are convinced by reading the articles of incorporation under which the petitioner exists that it can not by any interpretation be regarded as an insurance company within the meaning of section 234 (a) (10), *supra.* It was organized under the laws of the State of Utah in 1912, and, according to its charter, it was empowered to acquire by purchase, lease, exchange or otherwise, coal lands, coal mines, and coal properties, and to develop, operate, manage and control the same. The fact that the

state statute permits it to insure its own workmen, in lieu of placing the risk with insurance companies regularly engaged in that business, does not convert a coal-mining business into an insurance business. Nor does the fact that it was compelled by section 3125 of the Compiled Laws of Utah to pay a tax " of the same per cent as required by law to be paid by insurance companies upon their premiums " change the character of the petitioner's business from coal mining to insurance.

Even assuming that the petitioner should be regarded as an insurance company for our purposes, we still feel that the deduction can not be allowed as a " net addition required by law to be made within the taxable year to reserve funds."

In *McCoach* v. *Insurance Company of North America*, 244 U. S. 585, the question considered was whether the reserve funds set aside by the taxpayer were the funds " required by law " within the meaning of the statute. The court, after considering the duties and powers of the State Insurance Commissioner under the laws of the State of Pennsylvania, said:

It appears that under this legislation, and under previous statutes in force since 1873, the insurance commissioner has required plaintiff and similar companies to return each year, as an item among their liabilities, the net amount of unpaid losses and claims, whether actually adjusted, in process of adjustment, or resisted. And, although this practice has not been sanctioned by any decision of the Supreme Court of the State, it is relied upon as an administrative interpretation of the law.

Conceding full effect to this, it still does not answer the question whether the amounts required to be held against unpaid losses, in the case of fire and marine insurance companies, are held as " reserves ", within the meaning of the Pennsylvania law or of the act of Congress, however they may be designated upon the official forms. As already appears, the Pennsylvania act specifically required debts and claims of all kinds to be included in the statement of liab'lities, and treats them as something distinct from reserves. The object is to exercise abundant caution to maintain the companies in a secure financial position.

The act of Congress, on the other hand, deals with reserves not particularly in their bearing upon the solvency of the company, but as they aid in determining what part of the gross income ought to be treated as net income for purposes of taxation. There is a specific provision for deducting " all losses actually sustained within the year and not compensated by insurance or otherwise." And this is a sufficient indication that losses in immediate contemplation, but not as yet actually sustained, were not intended to be treated as part of the reserve funds; that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies.

In our opinion the reserve against unpaid losses is not " required by law ", in Pennsylvania, within the meaning of the act of Congress.

See also *United States* v. *Boston Insurance Co.*, 269 U. S. 197, in which the court said:

We think *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585, 589, is conclusive of the issue here presented; and appellee's claim must be denied. * * *

It follows from *McCoach* v. *Insurance Co.* that the permitted deductions specified by section 12, Act 1916, *do not necessarily include anything which may be denominated "reserve fund" by state statute or officer.* We there distinctly ruled that the "reserve fund" of the Federal Act did not include something held by a fire and marine insurance company to cover accrued but unsettled claims for losses. We adhere to and reaffirm that doctrine. * * * (Italic supplied.)

See also the language contained in *United States* v. *Boston Insurance Co., supra*, with respect to *Maryland Casualty Co.* v. *United States*, 251 U. S. 342.

The statute of Utah under which the petitioner chose to insure its employees provided for the annual rendition to the Commission of satisfactory proof of financial ability to pay compensation, and it further provided that the Commission may require the deposit of acceptable security to secure the payment of said compensation. There is no requirement in the Utah statute for the setting aside of a reserve such as was required by resolution of the Industrial Commission of Utah, nor do we find anywhere in the statute creating the said Commission authority to require corporations to establish such reserves. Therefore, considering the state statute in the light of *McCoach* v. *Insurance Company of North America, supra*, and *United States* v. *Boston Insurance Company, supra*, we are of the opinion that the amounts sought to be deducted by the petitioner are not reserve funds "required by law" within the meaning of the taxing statute.

Reviewed by the Board.

*Judgment will be entered for the respondent.*