## THE CAXTON PRINTERS, LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62142.   Promulgated April 6, 1933.

---

[1] SEC. 291. FAILURE TO FILE RETURN.

*S. Ben Dunlap, Esq.*, for the petitioner.
*George E. Adams, Esq.*, for the respondent.

### OPINION.

BLACK: In order for petitioner to be entitled to deductions of donations or payments made to a pension trust fund, such payments or donations must be made in compliance with the terms of the statute. We do not think that the facts connected with petitioner's setting up on its books as a liability in 1929 a reserve designated " Pension Trust Fund " of $8,000 are sufficient to entitle petitioner to have such fund allowed as a deduction.

Section 23 (q) of the Revenue Act of 1928 provides:

An employer establishing or maintaining a pension trust to provide for the payment of reasonable pensions to his employees (if such trust is exempt from tax under section 165, relating to trusts created for the exclusive benefit of employees) shall be allowed as a deduction (in addition to the contributions to such trust during the taxable year to cover the pension liability accruing during the year, allowed as a deduction under subsection (a) of this section) a reasonable amount transferred or paid into such trust during the taxable year in excess of such contributions, but only if such amount (1) has not theretofore been allowed as a deduction, and (2) is apportioned in equal parts over a period of ten consecutive years beginning with the year in which the transfer or payment is made.

Section 165, referred to in the above quoted section, provides in substance that a trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the benefit of its employees shall not be taxable, but shall be taxable to the distributee when distributed.

We think it clear that under these sections of the 1928 Act, before payments or donations made by an employer to a pension trust fund can be allowed as deductions from gross income, it must be shown that such payments or transfers claimed were made to a valid, existing trust. Even if it be conceded that the resolutions adopted by the stockholders and directors on December 23, 1929, were within

themselves sufficient to establish a valid trust to receive and administer a trust fund to pay pensions to petitioner's employees, nothing was paid or transferred to the trust in 1929. A mere setting up of a reserve liability on a taxpayer's books is not a paying into or transfer of funds to the trust. The statute allows a deduction of " a reasonable amount *transferred* or *paid* into such trust " during the taxable year in excess of any contributions made to take care of the pension liability accruing during the year. There is no evidence that petitioner made any contributions to take care of any pension liability accruing during the year and which would be deductible under section 23 (a) as a business expense. If petitioner is entitled to a deduction of the $8,000 claimed it must come under section 23 (q) above quoted, and we hold there was no such payment or transfer of funds to a pension trust as is contemplated by the terms of said section.

Petitioner cites in support of its contention, *Hibbard, Spencer, Bartlett & Co.*, 5 B. T. A. 464; *Live Stock National Bank*, 7 B. T. A. 413; *Lemuel Scarbrough*, 17 B. T. A. 317, and *Elgin National Watch Co.*, 17 B. T. A. 339. These were cases which were decided under prior acts which did not contain any such provision as section 23 (q) of the Revenue Act of 1928, which defines and limits the deductions which can be made of payments and contributions to a pension trust fund. However, we do not think there is any conflict between what we held in those cases and what we now hold in the instant case. In those cases we ruled that amounts actually paid into a fund by an employer during each year for pensioning its employees are deductible from gross income for the year as ordinary and necessary expenses of carrying on the employer's business, where the facts and circumstances connected with the creation and operation of the fund show that it is a valid, existing trust. And here as there, we hold that such deductions are only allowable where there is an actual payment or transfer of funds to a legal, enforceable trust. Cf. *Merrill Trust Co.*, 21 B. T. A. 1409. For reasons we have already stated, there was no such payment or transfer of the $8,000 in question as to entitle petitioner to deduct it from gross income. On this issue we hold for respondent.

The reserve of $600, which petitioner set up as an insurance fund and claimed as a deduction from 1929 income, was for the purpose of paying for a group insurance premium on certain employees, to provide for payment of insurance liability between December 23, 1929, when the insurance was authorized and January 3, 1930, when the group policy by the insurance company was actually issued, and to cover insurance on the life of petitioner's president, which petitioner proposed to carry itself. This reserve was disallowed by the

respondent on the ground that it was a contingent liability and not allowable as a deduction, which we think was correct. *Horn & Hardart Baking Co.*, 19 B. T. A. 704; *Naitove & Co.* v. *Commissioner*, 32 Fed. (2d) 949; *Spring Canyon Coal Co.*, 13 B. T. A. 189; aff'd., 43 Fed. (2d) 78; certiorari denied, 284 U. S. 654.

It seems clear that the $114.73 policy premium charged by the Prudential Insurance Company for writing the group policy was both incurred and paid in 1930. Therefore, whether petitioner kept its books on the cash receipts and disbursements basis, or whether it kept them on the accrual basis, this $114.73 premium expense would only be deductible in 1930. The only basis for allowing the $600 reserve as a deduction for 1929 would be on the theory that petitioner was entitled to set up and take as a deduction such a reserve to carry its own insurance on its president for an indefinite length of time and insurance on its employees from the date of December 23, 1929, to January 3, 1930, the date when the group policy was written. From the cases already cited, we have seen that such a contingent reserve is not an allowable deduction under the provisions of the statute. On this issue, we hold for respondent.

The remaining issue concerns depreciation. An examination of the revenue agent's report upon which respondent's deficiency notice is based shows that for the year 1929 petitioner claimed depreciation deductions aggregating $7,166.54 and these were reduced by the revenue agent to $6,120.93, resulting in a net disallowance of $1,045.61 of the depreciation claimed by petitioner. This adjustment was made by increasing the depreciation on buildings $948 over the amount claimed by petitioner, and increasing the depreciation on autos and trucks $390.63 over the amount claimed by petitioner and by decreasing the amount claimed on machinery and fixtures $2,384.34. Petitioner does not of course contest respondent's action in increasing the amount of depreciation allowance on buildings and on autos and trucks, but does contest his action in reducing depreciation on machinery and fixtures. An examination of the revenue agent's report with respect to this decrease shows that it is based upon the determination that of the total value of machinery, equipment, fixtures, etc., carried on petitioner's books in 1929, $25,602.27 thereof had been fully exhausted by prior deductions for depreciation.

A complete detailed schedule was furnished petitioner by the revenue agent, showing how respondent's depreciation computation was made, and at the hearing petitioner offered no satisfactory evidence to combat the correctness of respondent's determination.

The determination made by respondent is presumably correct and the burden of proof to show the contrary is upon petitioner. As

said by the court in *Rieck* v. *Heiner*, 25 Fed. (2d) 453 (certiorari denied, 277 U. S. 608), "nor is there a burden on the Commissioner, when he has formally determined an amount of depreciation to prove it right as a condition to sustaining the assessment by showing the investigation he has pursued and the matters that have influenced his judgment, for having found the depreciation and having made an assessment based on it, the law presumes his action right and the assessment prima facie valid."

Petitioner further contends that it is entitled to depreciation of 15 per cent annually on its machinery and plant equipment, which would mean a life of only 6⅔ years. We think the evidence would not sustain such a short life as that. The rate allowed petitioner by respondent in the current year, as well as in prior years, was 10 per cent, and we think that rate is just and reasonable and should not be disturbed.

Reviewed by the Board.

*Decision will be entered for the respondent.*