ROBERT S. SULLIVAN and SHIRLEY J. SULLIVAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sullivan v. Commissioner
Docket No. 31217-81.
United States Tax Court
T.C. Memo 1984-621; 1984 Tax Ct. Memo LEXIS 51; 49 T.C.M. (CCH) 194; T.C.M. (RIA) 84621; November 29, 1984. *51 Held, S underreported gross receipts from his tax return preparation and bookkeeping business in 1976, 1977 and 1978; Held further, S's claimed depreciation deductions and investment tax credits for 1976, 1977 and 1978 are disallowed in part; Held further, S's claimed automobile expense deductions for 1976, 1977 and 1978 are disallowed in part; Held further, S's claimed repair expense deduction for 1978 disallowed in part; Held further, S's loss on the sale of certain real estate during 1978 is disallowed in part; Held further, S's gain on the sale of certain furniture, fixtures, and equipment during 1978 determined; Held further, S's gain on the sale of a computer during 1978 increased; Held further, S is liable for the addition to tax for fraud under sec. 6653(b), I.R.C. 1954, for 1976, 1977 and 1978; and Held further, the statute of limitations does not bar the assessment of the deficiency and the addition to tax under sec. 6653(b), I.R.C. 1954, for 1976 and 1977. Edwin W. Davis and H. Campbell Zachry, for the petitioners. William P. Hardeman, for the respondent. NIMS MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1976
$7,274.28
$3,637.14
1977
8,934.32
4,734.66
1978
17,970.99
9,517.00
*54 After concessions, the issues for decision are: 1) whether petitioner underreported gross receipts from his tax return preparation and bookkeeping business in 1976, 1977 and 1978; 2) whether petitioner claimed excessive depreciation deductions in 1976, 1977 and 1978 for a building used in his business; 3) whether petitioner claimed excessive depreciation deductions in 1976, 1977 and 1978 for certain furniture and fixtures used in his business; 4) whether petitioner claimed an excessive investment tax credit in 1976 for certain furniture and fixtures used in his business; 5) whether petitioner properly computed a section 1231 loss realized during 1978 on the sale of certain furniture, fixtures and equipment used in his business; 6) whether petitioner claimed excessive depreciation deductions in 1976, 1977, and 1978 for a BMG computer used in his business; 7) whether petitioner claimed excessive depreciation deductions in 1977 and 1978 for a Burroughs computer used in his business; 8) whether petitioner properly computed the gain realized during 1978 on the sale of a Burroughs computer; 9) whether petitioner is entitled to claim an investment tax credit in 1977 for the purchase *55 of a Burroughs computer and, if so, whether petitioner must recapture the credit in 1978 when the computer was sold; 10) whether petitioner claimed excessive depreciation deductions in 1976, 1977 and 1978 for automobiles used in his business; 11) whether petitioner claimed excessive investment tax credits in 1976 and 1978 for automobiles used in his business; 12) whether petitioner claimed excessive automobile expenses in 1976, 1977 and 1978; 13) whether petitioner claimed excessive repair expenses in 1978; 14) whether petitioner correctly reported a capital loss realized on the sale of certain real estate during 1976; 15) whether petitioner is liable for the addition to tax under section 6653(b); and 16) whether the statute of limitations bars assessment of the tax liabilities and additions to tax for 1976 and 1977. For reasons of convenience, we have combined our findings of fact and opinion with respect to each issue. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Robert S.Sullivan and Shirley J. Sullivan (Mrs. Sullivan), husband and wife, resided in Lufkin, *56 Taxas at the time they filed their petition.For convenience, we will from time to time herein refer to Robert S. Sullivan as petitioner. Issue 1.Understatement Of Gross Receipts
During the years in issue, petitioner owned and operated Data Center, a tas return preparation and bookkeeping service. Petitioner, a college graduate, had taken several accounting courses and had served approximately four years as an Internal Revenue Agent prior to opening the business in 1967. Mrs. Sullivan worked as a secretary for Data Center from 1976 through 1978. Petitioner sold Data Center in 1978. In addition to the income received from Data Center, petitioner received rental income from various tenants and wages from the Bone Hill Foundation, a charitable organization which paid petitioner a salary to manage its business affairs. Petitioner received payments from the Bone Hill Foundation and tenants in the form of checks. He collected both checks and currency from Data Center clients. Petitioner would deposit in one bank account all checks and some of the cash he received during the year. He paid both personal and business expenses with the undeposited cash. Petitioner did not maintain *57 a separate bank account for business and personal purposes. Petitioner and his employees recorded payments received from all three sources on calendars located in the Data Center office. Petitioner's bookkeeper, Marie Johnson, also maintained index cards on which she recorded amounts due from bookkeeping clients. For various reasons, neither petitioner nor his employees recorded on the calendars all payments they collected. Petitioner maintained separate manila file folders for each of the income tax returns he prepared. After an income tax return was completed, petitioner or an employee would place it in a file folder and indicate on the outside of the folder the fee the client would be charged. Once petitioner or an employee received payment, the fill would be marked "paid". If the client paid less than the stated price, the file would be marked accordingly. Neither petitioner nor his employees consistently marked the file paid or noted the actual dollar amount received. Despite the existence of the calendars, file folders and index cards, petitioner combined total bank deposits for the year with an estimate of non-deposited cash income used for personal expenses *58 to calculate total gross receipts from all sources. Using this method, petitioner reported total gross receipts for 1976, 1977 and 1978 as follows: Year
Amount
1976
$68,073
1977
69,530
1978
83,557 In the notice of deficiency, respondent determined that petitioner had understated gross receipts in all three years. Analyzing petitioner's bank deposits, file folder amounts and index card entries respondent determined gross receipts as follows: Year
Amount
1976
$78,131.47
1977
90,231.00
1978
97,395.12
The issue we must decide is whether petitioner underreported income during 1976, 1977 and 1978 as determined by respondent. If a taxpayer keeps no books or records, or his records are inadequate, section 446(b) authorizes respondent to compute income by whatever method will, in his opinion, clearly reflect the taxpayer's income. No particular method is required since circumstances will vary in individual cases. Harbin v. Commissioner,40 T.C. 373, 377 (1963). Respondent's determination is prima facie correct and petitioner has the burden of showing it erroneous. Welch v. Helvering,290 U.S. 111 (1933); *59 Berlin v. Commissioner,42 T.C. 355 (1964); Rule 142(a). Petitioner does not dispute respondent's authority to recompute his gross receipts under section 446(b). Petitioner argues, however, that the method used by respondent to compute income does not clearly reflect income. Petitioner, citing Moore v. Commissioner,T.C. Memo. 1982-347, further argues that respondent should bear the burden to establish the correctness of his gross receipts computation for knowingly withholding from petitioner's counsel a workpaper of the auditing agent. He contends respondent's actions constituted "extraordinary misconduct". [2]
Based on the record before us, we refuse to shift the burden of going forward with the evidence to respondent. It is unclear from the record whether respondent intentionally or accidentally *60 omitted the workpaper. Even if intentional, petitioner has not established this omission adversely affected the preparation of his case. We must now decide whether petitioners' evidence is sufficient to overcome the deficiency notice's presumption of correctness. Ken Slane (Slane), a C.P.A. hired by petitioner to testify as an expert, sampled respondent's computations and discovered that respondent had double-reported some income items and included some non-income items. Slane believed that the office calendars provided the most accurate record of gross income for the years in issue. Totalling income items as they appeared on petitioner's office calendars, Slane determined gross receipts in the amounts of $75,891, $82,041 and $93,643 for 1976, 1977 and 1978, respectively. Although we recognize that respondent's method of determining gross receipts involved some degree of estimation, we are not convinced that Slane's method was more accurate. Petitioner testified that neither he nor his employees recorded on the calendars all income received. As a result, many of Slane's computations were merely estimates. Petitioner also failed to identify some of the calendar entries; *61 e.g., amounts classified as "other".In 1978 alone, "other" amounts totalled $33,995.34. Slane often omitted these entries from his computations because of his inability to classify them.Furthermore, petitioner admitted at trial that the calendar entries were not intended to be accounting entries. He used these entries only to determine the fee to charge clients for future services. Special Agent Carter, an Internal Revenue agent who conducted a criminal investigation of petitioner's income tax returns for the years in issue, testified that he mailed 1100 letters requesting petitioner's clients to identify whether the amounts they paid for the preparation of their returns correlated with the amounts shown on the file folders. Ninety percent of the letters returned indicated that the file folder amount and the amount paid were the same. The remaining ten percent stated that the amount they paid was either above or below the file amount. Moreover, Slane conceded in his testimony that respondent chose the best method available to compute gross receipts, given the records available at the time of the civil investigation. Slane also admitted that a number of respondent's *62 computations were correct. On the basis of the entire record, we are convinced respondent's method of computing gross receipts reflects petitioner's income as clearly as was reasonably possible. Accordingly, we sustain respondent's determination on this issue. Issue 2. Depreciation Deductions for Building
On their 1976, 1977 and 1978 income tax returns, petitioners claimed a depreciation deduction of $3,750 for a building purchased on January 1, 1976. Petitioners allocated the $86,825.59 purchase price for the building as follows: 1) $75,000 - building; 2) $5,000 - paved parking area; 3) $1,325.59 - furniture and fixtures; and 4) $5,000 - land. Petitioners estimated a 20-year useful life for the building. Respondent allowed a depreciation deduction of $2,394 for the building for each year after determining that the building had a useful life of 30 years and a cost basis of $71,825.59. Respondent allocated the balance of the purchase price to the paved parking area and the land. No amount was allocated to the furniture. The issue for decision is whether petitioner is entitled to depreciation deductions in excess of the amounts allowed by respondent. In *63 making his determination, respondent reallocated the depreciation deduction allowances by adjusting the basis of the property between depreciable and non-depreciable assets. The determination made by respondent is presumptively correct and the burden of proof to show the contrary is upon petitioners. Caxton Printers, Ltd. v. Commissioner,27 B.T.A. 1110 (1933); Rule 142(a). Because the sales contract did not allocate the purchase price among the various assets, petitioners allocated the purchase price according to the relative fair market value of the assets purchased. The only evidence of fair market value was petitioner's testimony as follows: I knew that Mr. Jackson had bought both tracts of land, the building he had and the building I had, for about $4,000 about seven years earlier. I bought half the land. That would put it $2,000 for what I bought. I bought some land behind it, but that wasn't street frontage, so I thought $5,000 would be a fair value for the land. This evidence, standing alone, is insufficient to corroborate petitioner's fair market value estimates. Accordingly, we uphold respondent's allocation of the purchase price. We must *64 also decide whether the building's useful life was 30 years, as determined by respondent rather than 20 years as claimed by petitioner. Section 1.167(a)-1(b), Income Tax Regs., defines the useful life an asset as "the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business * * *." The regulation provides further that the useful life of an asset shall be determined by reference to the taxpayer's "experience with similar property taking into acount present conditions and probable future developments." Some of the factors to be considered are: 1) wear and tear and decay or decline from natural causes, 2) the normal progress ot the art, economic changes, inventions and current development within the industry and the taxpayer's trade or business, 3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and 4) the taxpayer's policy as to repairs, renewals, and replacements. If the taxpayer's own experience is inadequate, the regulations permit the taxpayer to use the general experience in the industry. Section 1.167(a)-1(b), supra.
The only evidence offered by petitioners to support *65 the useful life estimate of 20 years was the age and condition of the building when petitioner purchased it. Petitioners did not offer any evidence probative of his experience or the industry's experience with similar property. Because petitioners' evidence is insufficient to establish the period over which the building might reasonably be expected to be useful in the petitioner's business, we uphold respondent's useful life determination. Furniture and Fixtures
A. Issue 3: Depreciation Deductions
On Schedule C of their 1976 and 1977 income tax returns, petitioners claims depreciation deductions for furniture and fixtures used in the business.Petitioners claimed a $1,240 cost basis in furniture and fixtures acquired prior to January 1, 1976 and a $10,000 cost basis in furniture and fixtures acquired on January 1, 1976. The furniture and fixtures acquired on January 1, 1976, consisted of assets purchased with the building discussed above as well as assets brought from petitioner's home and previous office. To substantiate the basis of these assets, petitioner prepared an itemized summary partially from memory and partially from an analysis of cancelled *66 checks, receipts and appraisals. The summary estimated a total cost of $6,970.99 for these assets. Respondent fully allowed petitioners' depreciation deduction for furniture and fixtures acquired prior to January 1, 1976. Respondent argues, however, that petitioners' entire depreciation deduction for furniture and fixtures acquired on January 1, 1976, should be disallowed for failure to substantiate the basis of these assets. We agree. Petitioner's summary submitted in support of the disputed depreciation deductions provides inadequate substantiation of the cost basis petitioners claimed in the furniture and fixtures. We cannot give any weight to a 1983 summary petitioner prepared, partially from memory, dealing with costs he incurred in 1976. Moreover, the receipts petitioner relied on to prepare the summary establish that many of the assets were purchased prior to 1976. Petitioner testified at trial that although he purchased these assets prior to 1976, he did not claim depreciation deductions for them prior to 1976. Petitioners, however, claimed depreciation deductions for other furniture and fixtures acquired prior to January 1, 1976, and we are unconvinced *67 petitioner failed to claim all depreciation deductions to which they were entitled. Petitioner also introduced cancelled checks payable to various payees to substantiate the purchase price of some of the assets. Petitioner, however, did not offer any corroborating evidence to establish that these checks represent payment for furniture and fixtures used in his business. For the above-mentioned reasons, petitioners have failed to prove that respondent's basis determination is incorrect and, accordingly, we deny the deduction in full.Rule 142(a). B. Issue 4. Investment Tax Credit
For taxable year 1976, petitioners claimed an investment credit for furniture and fixtures placed in service on January 1, 1976. Section 38. Respondent disallowed the entire credit. For the reasons stated above, petitioners have failed to substantiate the basis in these assets. Therefore, petitioners' claimed investment credit is disallowed. C. Issue 5.Sale of Furniture, Fixtures, and Equipment in 1978
Petitioners argue that they are entitled to claim a section 1231 loss in the amount of $2,880 on the October 1, 1978, sale of office furniture, fixtures and equipment to B. Burris. Petitioners *68 realized gross proceeds from the sale in the amount of $7,000. Petitioner determined a basis of $9,880 in the assets as follows: Furniture and Fixtures
(acquired on various dates)
$ 113
Xerox copier
1,462
Files
633
Check protector
292
Adding machine
238
Furniture and fixtures
(acquired on 1/1/76)
7,142
$9,880
Respondent determined that petitioners realized ordinary income of $3,128 and long-term capital gain of $1,628 from the sale of the furniture and fixtures. Respondent does not dispute that petitioners realized gross proceeds in the amount of $7,000 from the sale. Respondent argues, however, that petitioners failed to substantiate the basis in the furniture and fixtures purchased on January 1, 1976. We agree with respondent. As discussed above, petitioners have failed to substantiate the basis in any furniture or fixtures purchased on January 1, 1976. Moreover, petitioners introduced no evidence to substantiate the basis in the other assets sold. Accordingly, we sustain respondent's determination on this issue. Computers
A. Issue 6. Depreciation Deductions for BMG Computer
Petitioner paid $27,180.60 for a business *69 computer (BMG Computer) which he purchased from Business Machines Group in December, 1975. For purposes of computing depreciation deductions, petitioners claimed a $30,331 cost basis in the computer on Schedule C of their 1976, 1977 and 1978 income tax returns. Respondent determined a $27,180.60 cost basis for the computer. Section 1.1012-1(a), Income Tax Regs., provides that "the basis of property is the cost thereof." As noted above, we have found that petitioner paid $27,180.60 for the computer. Petitioners, therefore, cannot claim a cost basis in the computer in excess of $27,180.60. Petitioner argues that he paid $30,331.00 for the computer. To substantiate this cost, petitioner presented a statement of account from Business Machines Group dated January 17, 1976, totalling $30,331.28. This statement lists a purchase price of $28,539.62 for the equipment. The remaining balance of $1,791.66 represents amounts charged for repairs and supplies. A second statement of account from Business Machines Group dated March 20, 1976, also lists the computer's purchase price as $28,539.62. Petitioner, however, in his own handwriting, noted on this statement that he paid *70 only $27,180.60 for the computer. Based on this evidence, petitioner has not established that he paid more than $27,180.60 for the computer. Accordingly, we uphold respondent's determination. B. Issue 7. Depreciation Deductions Claimed for Burroughs Computer
Petitioner purchased a business computer from Burroughs Corporation (Burroughs Computer) in August, 1977. For purposes of computing depreciation deductions, petitioners claimed a $30,080 cost basis in the computer on Schedule C of their 1977 and 1978 income tax returns. Respondent determined a $22,960 cost basis for the computer. Petitioners rely on nine invoice statements from Burroughs Corporation and one invoice statement from ADS Systems Consultants to substantiate their cost basis in the computer. These statements list total charges of $30,079.46. Respondent argues that the first invoice from Burroughs Corporation listing total charges of $22,960 represents the purchase price of the computer. The remaining nine invoices, according to respondent, represent amounts incurred by petitioner for training, maintenance and supplies. On this record, we must agree with respondent. The invoice statements *71 relied on by petitioners contain coded numbers and abbreviations with no accompanying explanation.We are unable to determine from these statements whether the amounts listed represent the purchase price of the computer or relate to maintenance, training or supply expenses and petitioner has no enlightened us. Petitioners have therefore failed to meet their burden of proof on this issue. Accordingly, respondent's determination is sustained on this issue. C. Issue 8. Sale of Burroughs Computer in 1978
Petitioner sold the Burroughs computer to Roy Isom in August, 1978. Isom made payments totalling $20,720.01 to petitioner in 1978 and a final payment in the amount of $2,000 in 1979. Included among the $20,720.01 of payments petitioner received from Isom in 1978 were three checks payable to petitioner totalling $1,763.34. Petitioner received these checks pursuant to an agreement allowing Isom to make payments on petitioner's note held by Burroughs Corporation until Isom could obtain suitable financing. Upon receipt of Isom's checks, petitioner executed checks in the amount of $1,763.34 payable to Burrough's Corporation. On Form 4797 of his 1978 Federal income *72 tax returns, petitioner reported a $18,957 sales price for the computer. In the notice of deficiency, however, respondent determined a sales price of $22,720.01. Petitioner concedes that the $2,000 collected in 1979 should have been reported in 1978 because the transaction did not qualify as an installment sale under section 453(b). [3] Petitioner argues, however, that he should not include in the computer's sale price the three checks totalling $1,763.34 he received in 1978 from Isom because he was only a middleman for these payments. We disagree. An obligor realizes income to the extent a third party discharges his obligation. Old Colony Trust Company v. Commissioner,279 U.S. 716 (1929). Regardless of whether petitioner was a middleman for the payments, he was obligated on the note when Isom made the payments. Petitioners, therefore, must include *73 the amount of the three checks as part of the sales price. Accordingly, we uphold respondent's determination of petitioners' again realized on the sale of the computer. D. Issue 9. Investment Credit for Burroughs Computer
Petitioners failed to claim an investment credit for the purchase of the Burroughs Computer in 1977. Petitioners, therefore, reported no investment credit recapture in 1978 when petitioner sold the computer. Both petitioners and respondent agree that petitioners should have claimed an investment tax credit in 1977 and recapture the credit in 1978. Petitioners, however, disagree with respondent's determination of the credict and recapture amounts based on respondent's basis determination. For the reasons stated above, we find respondent's basis determination to be correct. Accordingly, we uphold respondent's investment credit and credit recapture determination. Automobiles
A. Issue 10. Depreciation Deductions
During the years at issue, petitioner owned three automobiles. Petitioner and Mrs. Sullivan used two of these automobiles for business purposes. The third automobile was used entirely for petitioners' personal purposes. *74 On their 1976, 1977 and 1978 income tax returns, petitioners claimed automobile depreciation deductions in the amounts of $3,153, $2,609 and $852, respectively. In computing these amounts, petitioner reduced the total depreciation in each year by $1,000 as allocable to personal use. Respondent determined automobile depreciation deductions in the amounts of $1,162.00, $1,161 and $1,191 for taxable years 1976, 1977 and 1978, respectively. Respondent determined a 75 percent business use of petitioner's car and no business use of Mrs. Sullivan's car. We must decide whether petitioner is entitled to depreciation deductions in excess of the amounts allowed by respondent. In Neaderland v. Commissioner,52 T.C. 532 (1969), affd. 424 F.2d 639 (2d Cir. 1970), cert. denied 400 U.S. 827 (1970), we held that when the Commissioner has allowed part of a claimed deduction, we will not alter his determination unless facts appear from which a different apprximation can be made. In the instant case, the evidence does not enable us to make a different approximation. Petitioner testified at trial that he used his automobile constantly in *75 the business to pick up customer records and bookkeeping accounts and to go to the bank, post office, etc. Mrs. Sullivan testified that although she was hired principally as a secretary, she used her car to handle the same type of matters as her husband, although less frequently. Neither petitioner nor Mrs. Sullivan offered records or other evidence of their business use of the automobiles to substantiate their general estimates. In the absence of more compelling evidence, we agree with respondent's determination. Rule 142(a). B. Issue 11. Investment Tax Credits
Petitioners claimed an investment credit for an automobile in 1976. Respondent disallowed the credit for the automobile finding, petitioner purchased the car in 1975. Because petitioner offered no evidence at trial to establish the purchase date, we sustain respondent's determination. Rule 142(a). For the taxable year 1978, petitioners claimed an investment credit for a Thunderbird and a Suburban based on a 100 percent business use for each car. Respondent allowed 75 percent of the Thunderbird's cost for investment credit purposes. Respondent found no business use of the Suburban and thus allowed no portion *76 of its cost for investment credit purposes. For the reasons stated above, we uphold respondent's determination of petitioners' business use of their respective automobiles. Therefore, respondent's investment credit determination is sustained. C. Issue 12. Automobile Expenses
Petitioners claimed automobile expense deductions in the amounts of $2,508, $3,068 and $2,200 for 1976, 1977 and 1978, respectively. In computing these amounts, petitioners reduced the total expenses incurred in operating the two business automobiles by $1,000 to account for personal expenses. To substantiate total automobile expenses incurred during the years in issue, petitioner introduced into evidence cancelled checks representing automobile expenses incurred in operating both the business and personal automobiles. Petitioner, however, was unable to distinguish which checks represented amounts spent on the two business automobiles as opposed to the personal automobile. Respondent determined that petitioner incurred total automobile expenses of $2,857.56, $2,648.39 and $2,031.34 for 1976, 1977 and 1978, respectively. Respondent allowed 50 percent of these amounts as an automobile *77 expense deduction for each of the years at issue. Petitioners concede respondent's determination of total automobile expenses incurred during 1978. Petitioners, however, disagree with respondent's business use allocation for 1976, 1977 and 1978, and respondent's determination of total automobile expenses incurred by petitioners during 1976 and 1977. As discussed above, petitioners introduced insufficient evidence to establish that respondent's business use determination was incorrect. Moreover, we cannot corroborate petitioner's claimed business expenses because of his inability to distinguish which checks were written for business as opposed to personal expenses. Accordingly, respondent is sustained on this issue. Issue 13. Repair Expenses
On their 1978 income tax return, petitioners claimed a $6,155 deduction for various repair expenses. Respondent disallowed the entire deduction due to lack of substantiation. At trial, petitioner introduced eighteen checks totalling $6,155.19 to substantiate the deduction as follows: Payee
Amount
Cox Mufffler
$ 40.11
Dillon Parker
249.03
Morrow Buick
147.18
Hutson Garage
35.00
Greater Lufkin Ford
13.44
Burroughs Corporation
342.35
Wardlow Business Machines
5.57
Burroughs Corporation
895.00
Burroughs Corporation
601.24
Burroughs Corporation
680.84
Burroughs Corporation
657.36
Burroughs Corporation
610.16
Kirby
1.50
Ford Air Conditioning
408.25
Ford Air Conditioning
28.00
Ford Air Conditioning
16.50
Ford Air Conditioning
18.50
Lowery Electric
1,405.16
$6,155.19
*78 Respondent argues that the deduction should be fully disallowed because: 1) respondent previously allowed deductions for the first seven checks totalling $832.68 as automobile and supply expenses; 2) the five checks payable to Burroughs Corporation are properly classified as capital expenditures; and 3) the remaining six checks do not represent amounts incurred for ordinary and necessary business expenses. On this record, we uphold respondent's determination. Petitioner's evidence adequantely substantiates the fact of payment. Petitioners, however, offered no evidence to substantiate that these amounts were incurred for deductible business expenses.The purpose of the five checks to Burroughs Corporation and the six checks to Kirby, Ford Air Conditioning and Lowery Electric remain totally unexplained, although petitioner had ample opportunity to testify regarding them. Petitioner's expert wintess, Ken Slane, testified at trial that because the cancelled checks support the repair expenses listed in petitioner's cash receipts and disbursement journal, the expenses claimed by petitioners are deductible. As stated above, this evidence adequately substantiates *79 the fact of payment, but is insufficient to establish the deductibility of the payments. Petitioner testified at trial that he prepared the cash receipts and disbursement journal on a monthly or quarterly basis from bank statements, deposit slips and checks. This testimony, however, provides no better classification of the expenses than the checks themselves. Slane admitted at trial that he had no independent knowledge of the character of the payments. He relied entirely on their characterization in the journal. Moreover, the auditing agent's worksheets establish that respondent allowed an $832.68 deduction for the automobile and supply expenses substantiated by the first seven checks listed above. Petitioner provided no corroborating testimony or other evidence to establish that the remaining expenditures represent deductible business expenses. Accordingly, respondent's determination is sustained. Issue 14. 1976 Capital Loss From Sale of Lots
On Schedule D of their 1976 income tax return, petitioners claimed a long-term capital loss in the amount of $2,124 on the sale of nine lots. Petitioner had inherited a one-fourth interest in the lots from his mother in 1970. *80 Respondent argues that petitioner realized a long-term capital loss in the amount of $668.68 from the sale of five lots during 1976. The parties agree petitioner realized net proceeds in the amount of $2,956.32 from the sale of the five lots identified by respondent. The parties also agree that petitioner's basis in these five lots was $3,625.00. The only issue for decision, therefore, is whether petitioner sold more than five lots during 1976. Petitioner introduced at trial several bills of sale substantiating the sale of various lots during the period from 1975 to 1978. These documents clearly establish that petitioner sold only five lots during 1976. Because petitioner's basis in these lots and the net proceeds realized from their sale are not in dispute, we uphold respondent's long-term capital gain determination for 1976. Issue 15. Additions to Tax
Respondent determined an addition to tax for fraud under section 6653(b) in the amounts of $3,637.14, $4,734.66 and $9,517 for 1976, 1977 and 1978, respectively. Petitioners concede that they underpaid taxes in all three years. Accordingly, the only issue remaining for decision is whether some part of *81 the underpayment was due to fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner,79 T.C. 888, 930 (1982). Respondent has the burden of proving fraud. Section 7454(a); Rule 142(b). In order to sustain his burden, respondent must show by clear and convincing evidence actual andintentional wrongdoing on the part of petitioner with intent to defraud the revenues. Miller v. Commissioner,51 T.C. 915 (1969). This burden may be met with circumstantial evidence. Stephenson v. Commissioner,79 T.C. 995, 1005, 1006 (1982). Circumstantial evidence found probative of fraudulent intent includes: 1) lack of adequate books and records which one would expect of a particular taxpayer, based on his business experience, education, knowledge of books and records, etc., Webb v. Commissioner,394 F.2d 366, 378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court and 2) failure to the taxpayer to cooperate in the investigation, Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). *82 Moreover, we have held that "consistent understatements of income in substantial amounts over a number of years by knowledgeable taxpayers, standing alone, are persuasive evidence of fraudulent intent to evade taxes." Otsuki v. Commissioner,53 T.C. 96, 108 (1969). We must, nevertheless, be mindful that fraud cannot be inferred from a mere inadvertent understatement of income, Holland v. United States,348 U.S. 121, 137 (1954) or from a deficiency in taxes due to an honest mistake or poor judgment. Iley v. Commissioner,19 T.C. 631, 635 (1952). The evidence in this case clearly establishes that at least part of petitioners' tax underpayment for the years at issue was intentional and not the result of an inadvertent omission or an honest mistake. Petitioner gained a thorough knowledge of both tax and bookkeeping principles as an IRS agent, accounting student, income tax return preparer and bookkeeper.Nevertheless, he utterly failed to maintain anything approaching accurate books and records in the course of his business. To the extent petitioner kept records, he ignored them and instead combined bank deposits and estimated *83 cash spent for personal expenses to determine gross receipts. He maintained no records to estimate personal cash expenses. Moreover, petitioners underreported gross receipts by $10,058.47, $20,701 and $13,838.12 for 1976, 1977 and 1978, respectively. These amounts represent 15 percent, 30 percent and 17 percent of gross receipts reported by petitioners in those years. Petitioner also offered little assistance during the investigation of the income tax returns for the three years in question. He refused to turn over any books or records to the IRS agent conducting a criminal investigation of the income tax returns for the years in issue. On the record before us, we conclude that respondent has satisfied his burden of proof. Petitioner's haphazard method of determining gross receipts, incomplete recording of gross receipts, pattern of substantial underreporting of gross receipts for the years in issue and lack of cooperation, all support a finding of a fraudulent underpayment of tax in light of petitioner's tax return preparation and bookkeeping experience. Petitioner argues that his determination of gross receipts was made in good faith and not with intent or as *84 a willful attempt to evade taxes. We disagree. Having audited and prepared tax returns for approximately 14 years; petitioner was acutely aware of the necessity to keep accurate records to correctly report gross receipts but failed to do so. Petitioners further argue that because they never concealed their business records, they possessed no evil motive which would justify finding fraud. As a matter of fact petitioner did refuse to allow the Internal Revenue Service to review such records until the criminal investigation against petitioner was dropped. Moreover, even if the examining agents had been given access to petitioner's books and records, substantial omissions of income from these records would have prevented the accurate determination of gross receipts. Accordingly, we hold for respondent on this issue. Issue 16. Statute of Limitations
Petitioners filed their income tax returns for 1976 and 1977 on June 15, 1977, and October 16, 1978, respectively. Respondent issued the statutory Notice of Deficiency for these years on October 1, 1981. Petitioners contend that the statute of limitations bars assessment and collection of the tax liabilities for taxable years *85 1976 and 1977. We disagree. Because petitioner filed a fraudulent return with the intent to evade taxes in 1976, respondent may assess a deficiency for that year at any time. Section 6501(a). Moreover, the statute of limitations does not bar assessment of the deficiencies for 1977. Respondent mailed the notice of deficiency to petitioners less than three years after they filed their 1977 income tax return. The statute of limitations on assessment, therefore, is suspended until the decision of this Court becomes final and for 60 days thereafter. Section 6503(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We note that Moore v. Commissioner,T.C. Memo. 1982-347 is a memorandum opinion of this Court and is therefore not necessarily to be deemed precedential in the disposition of other cases, including this case. We consider Moore↩ here because petitioners have extensively relied upon it to support their argument.
3. During the year at issue, section 453(b) provided in pertinent part as follows: * * * (2) LIMITATION--Paragraph (1) shall apply only if in the taxable year of the sale or other disposition -- (A) there are no payments, or (B) the payments * * * do not exceed 30 percent of the selling price.↩