*1203 OPINION.
Aeundell:
The first and second questions raised by these proceedings will be considered in one discussion, since both questions involve the ownership of the 110,939 shares of Sunshine Mining Co. stock. Eespondent determined that this stock was purchased by the Watson-Moore Co. during 1926 and 1927 and that it was carried on its books in the “ Sunshine Mining Company ” stock account as the property of the Watson-Moore Co. until December 31,1927, when the account was closed out to John E. Moore, who thereby received a constructive dividend in the amount of the fair market value of the *1204 stock, which respondent says is $122,032.90. The petitioners contend that the stock appearing in the above mentioned account belonged to and was purchased for John It. Moore, pursuant to his instructions to the Watson-Moore Co.
It has been fully established that the Sunshine stock in question was purchased and paid for by the Watson-Moore Co., and that the stock was carried in its books in a stock account entitled “ Sunshine Mining Company.” However, John R. Moore has testified that these purchases were made pursuant to his order and in his behalf; that the stock was issued in his name, except for the first few thousand shares; that the account was known to be his personal account; that the purchases were paid for by him from time to time as deliveries were made, either by cash, credit on the books, or assets turned over to the company; that no Sunshine stock was ever given to him that belonged to the Watson-Moore Co.; and that the latter company purchased the stock as his agent.
Moore’s testimony is corroborated, in part at least, by the books of the Sunshine Mining Co., which show that its account with the Watson-Moore Co. was closed out shortly after transferring 33,335 shares to it, while John R. Moore’s account with that company has continued to date, and practically all the shares originally in the. Watson-Moore account can be traced by certificate numbers into the account of J ohn R. Moore.
'Furthermore, a summary of certificates by serial numbers, which shows the date each certificate was transferred to Moore, discloses that prior to November 26, 1927, at least 111,780 shares stood in Moore’s name. The evidence shows that these same certificates still stood in his name in June 1931, and the books of the Sunshine Mining Co. show that at the end of 1927 the balance of J ohn R. Moore’s account was 173,985 shares.
Respondent has vigorously assailed the weight to be given the testimony of John R. Moore, basing his attack upon discrepancies between Moore’s testimony and affidavits submitted to the respondent which were received in evidence. Such discrepancies, however, have been either explained or the mistake admitted, and petitioners are no longer relying thereon. Respondent stresses particularly Moore’s attempt to convince the Government that the transactions in Sunshine stock were personal rather than company transactions. We do not understand that petitioners have receded from this position; they merely admit that the record shows that some stock originally was issued to Watson-Moore Co., but was later transferred to Moore.
Moore’s unrefuted testimony is that he ordered the stock bought for his account, that it was bought for his account by the company, and that he paid for each purchase. The only contradictory evidence. *1205 in the record is the manner in which the Sunshine Mining Co. stock transactions were handled on the books of the Watson-Moore Co. Book entries, however, must give way before the true facts. Doyle v. Mitchell, 247 U.S. 179, 187.
It is our opinion, therefore, that respondent erred in determining that John It. Moore and his wife received a constructive dividend on December 31, 1927, in the amount of the fair market value of 110,939 shares of Sunshine Mining Co. stock, since the record shows that the stock was purchased for John E. Moore personally and was not the property of the Watson-Moore Co. In view of the conclusion here reached it follows that so much of the deficiency found by the respondent against the Watson-Moore Co. as is attributable to treating the stock as the property of that company at any time is disallowed.
The nest issue is the cost basis to be used in determining the profit realized by the Watson-Moore Co. on sales of Little Sunshine Mining Co. stock in 1927. Despondent has computed the gain according to the contract and has thereby determined that the first shares sold were from the first 200,000-share block purchased. Petitioner has taken the average cost for the full 600,000-share purchase.
The petitioner submits this question to the Board upon the theory that as a matter of law the contract called for the purchase of 600,000 shares at a total cost of $150,000, or an average cost of 25 cents per share. This theory completely ignores the plain wording of the agreement, which fixes the cost of the first 200,000 shares at 15 cents a share, the cost of the second block at 25 cents a share, and the third, at 35 cents a share. If the shares purchased could not be identified with respect to their sales, petitioner would still be unable to prevail because in that event the “ first in, first out ” rule would apply, which is the rule followed by respondent. Upon this issue, therefore, respondent’s determination must be approved.
The third question relates to a commission of $5,000 which respondent has added to 1928 income of the Watson-Moore Co. as an item due to it by the Little Sunshine Mining Co. The evidence is that the item never appeared on the books of the Watson-Moore Co. and no such commission was ever earned by or paid to petitioner. Despondent discovered an item on the books of the Little Sunshine Mining Co. of $5,000 as being due to the Watson-Moore Co. and by reason thereof added that sum to the income of the petitioner. There is no suggestion of any services having been performed by petitioner for the Sunshine Mining Co. which would call for the payment of the commission, and Moore testified he did not understand the reason for the entry in the books of the Little Sunshine Mining Co. In the face of direct evidence that the sum was neither *1206 earned by nor paid to the petitioner, the presumption of correctness attaching to respondent’s determination has been overcome. The action of the respondent in this particular is reversed.
The remaining issue is whether any part of the deficiencies asserted against the Watson-Moore Co. for 1927 and 1928 is due to fraud with intent to evade tax. Since the burden of proving fraud is placed by statute upon the respondent, he has affirmatively alleged in his answers the grounds upon which he has determined that petitioners acted fraudulently.
While respondent has set forth numerous allegations of fraud with respect to each deficiency, he has failed to offer proof on each allegation, preferring to rely only upon certain specific allegations of fraud to support his determination. Thus, the allegation of fraud relied on by respondent in so far as John B. and Alma Y. Moore are concerned, relates to their failure to report as income in 1927 the fair market value of 110,939 shares of Sunshine Mining Co. stock which respondent claimed was a dividend from the Watson-Moore Co. Our findings that these shares were at all times John It. Moore’s and not the Watson-Moore Co.’s eliminates this item from consideration as an element of fraud. No proof of fraud as to 1925 and 1926 having been offered, respondent’s determination as to these years must likewise be disapproved.
The allegations of fraud as to the Watson-Moore Co. upon which proof was offered by respondent were the concealment of facts relating to the purchase and ownership of Sunshine Mining Co. stock, the manner in which the General Motors account was handled on the Watson-Moore Co.’s books, and the overstatement of petitioner’s stock purchases for 1926 by $60,000.
The principal proof offered in support of the fraud allegations was the testimony of the revenue agent who audited the books of the Watson-Moore Co. The agent testified in detail regarding numerous adjustments that were necessary from the Government’s point of view in order to reflect correctly taxpayer’s income for 1927 and 1928. Some of these adjustments were brought to his attention by the Watson-Moore Co.’s representative, and some were made upon his own determination. Some of the agent’s adjustments petitioner conceded as obviously correct, while others were vigorously objected to as incorrect. The deficiency letter shows that taxpayer’s income for 1927 was increased by virtue of these adjustments in the amount of $359,618.47, and at the same time adjustments by way of deductions amounted to $270,356.67. Adjustments for 1928 amounted to additions to income in the amount of $169,350.93, and additional deductions of $120,941.13.
Our discussion of the constructive dividend of Sunshine Mining Co. stock as an element of fraud as to John B. and Alma V. Moore *1207 and our decision that no element of fraud was involved disposes of this allegation as to the Watson-Moore Co. for 1927. We have carefully considered the proof offered by respondent upon his other allegations, but we are not convinced that it established fraudulent intent on the part of this petitioner for 1927 and 1928. The fact that numerous adjustments were necessary and that some were complicated in nature, due to the method of bookkeeping used by petitioner, is insufficient to establish fraud.
The remaining question is the alternative issue raised by respondent’s answers in Dockets 62179, 64790, and 64791 that petitioners were negligent and the 5 percent negligence penalties provided by section 275 (a) of the Revenue Acts of 1924 and 1926, and section 293 (a) of the Revenue Act of 1928, should be imposed. In the appeal of John R. Moore, Docket 64791, the parties stipulated the deficiencies for 1925 and 1926, but left the fraud question for decision. The respondent, however, failed to offer proof to support his alternative allegation of negligence as to these years, and, therefore, for lack of evidence, we must deny his contention that the negligence penalty be imposed. In the appeal of Alma Y. Moore, Docket 64790, respondent has determined a negligence penalty for 1928, which petitioner has failed to overcome, and the penalty for that year is therefore approved. The affirmative allegation of negligence against all of the petitioners for 1927 and against the Watson-Moore Co. for 1928 is in our opinion supported by the evidence. The record shows that numerous adjustments to income and deductions, totaling large sums, were necessary in order to reflect correctly the taxable income of these petitioners. We are satisfied from the evidence that these changes and corrections were necessary primarily because the taxpayers were negligent in keeping their accounts and rendering their returns, and that the deficiencies, at least in part, resulted from their negligence.
The deficiencies should be recomputed, giving effect to the concessions and stipulations of the parties and to the determination herein of the controverted issues. As to those errors alleged in the petitions that have been entirely ignored by the petitioners, the determination of the respondent is approved and should be so reflected in the recom-putation.

Decision will ie entered under Rule 50.