SHIRLEY YEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yee v. Commissioner
Docket No. 12507-82.
United States Tax Court
T.C. Memo 1985-379; 1985 Tax Ct. Memo LEXIS 254; 50 T.C.M. (CCH) 551; T.C.M. (RIA) 85379; July 29, 1985. Shirley Yee, pro se. Darren M. Larsen, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, for the taxable year ended December 31, 1978, determined a deficiency in income tax in the amount of $14,450 and an addition to tax under section 6653(a)[1] in the amount of $723 for Shirley Yee (petitioner) who resided in Torrance, California, at the time of filing the petition. Some of the facts have been stipulated, and the stipulation of facts and exhibits thereto are incorporated herein by this reference. The parties have settled, by means of stipulation, a number of the issues concerning unreported income and deductions, leaving for the Court's *255 consideration the question of the substantiation of several itemized deductions and losses connected with rental property and a restaurant owned by petitioner. Petitioner's 1978 income tax return, which was timely filed, included $31,765.85 in wages from her employment as an anesthetist. Petitioner is now claiming numerous itemized deductions which were not claimed on her 1978 income tax return apparently because she claimed two losses in the amounts of $18,410.56 and $37,322 attributable to the rental of a four-unit apartment building and a restaurant, respectively.Respondent disputes the two claimed losses. [2] For purposes of order and clarity, each of the issues submitted for our consideration will be separately set forth in our Findings of Fact and Opinion. Itemized Expense Deduction
The parties *256 stipulated that petitioner is entitled to an interest expense deduction of $7,028.28 for 1978. Petitioner has supplied Bank Americard Visa statements for the 1978 year reflecting finance charges of $128, which respondent contends are included in his allowance for miscellaneous credit card charges and which are part of the total amount of interest charges stipulated to by the parties. Initially, we note that the Bank Americard Visa statements are in the name of Jackman Yee, and not in petitioner's name. Prior to the taxable year 1978, Jackman Yee was divorced from petitioner. Further, petitioner has failed to show that the Bank Americard Visa finance charge of $128 is not a part of the $257 amount already allowed by respondent for miscellaneous credit card charges. Petitioner also submitted checks in payment of Montgomery Ward invoices which reflect finance charges approximating $40. This amount when coupled with the Bank Americard Visa finance charge falls short of the amount respondent has already allowed. Moreover, petitioner submitted additional checks to American Security Bank and Bank Americard Visa without specific testimony or further documentation which would reflect *257 what part, if any, of those payments represented interest or finance charges. Accordingly, we do not allow petitioner's claims for additional finance charges with respect to credit card charges. Respondent allowed $823.27 as interest paid to American Savings during 1978. The parties stipulated to a loan history statement from American Savings which reflected a $355.67 interest allocation on the January payment and a $467.60 interest allocation on the payoff on the loan during February of 1978. Between the January loan payment and the payoff of the loan, an adjustment appears reflecting a payment or credit of $525 which has been broken into amounts of $387 and $138. These amounts are labeled with various letters or symbols which might be interpreted as principal, interest, etc., however, there is no evidence in the record which explains the allocation. Respondent contends that the $138 portion represents an impress (prepayment) account, however, the total for the impress account does not show any increase. Petitioner contends that the payment represents additional interest. Based on the record, it appears more likely that the $138 amount was attributable to a charge for the *258 use of money. Accordingly, in view of the foregoing, we find that petitioner is entitled to $138 in addition to the $7,028.28 that respondent has allowed as an interest expense for 1978. Real Estate Tax - Itemized Deductions
Petitioner provided documentation reflecting real property taxes paid on her Diamond Bar and Hacienda Heights residences during the taxable year 1978 in the amounts of $577.40 and $206.45, respectively. On brief, respondent concedes that petitioner is entitled to these deductions for real estate taxes in the total amount of $783.85 for 1978. Service Charges for Checking Account - Itemized Deductions
Petitioner has supplied bank statements reflecting service charges of $23.89 for 1978 and she claims that they are deductible because some of the checks were written in connection either with her activities as an anesthetist or in connection with the rental activities of her apartments. Due to the state of the record, we are not able to determine what portion, if any, of the service charges are attributable to petitioner's incomeproducing activities. Accordingly, petitioner has not carried her burden of proof on this item. Welch v. Helvering,290 U.S. 111 (1933); *259 New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a). Finance Charges - Authomobile Club - Itemized Deductions
Although petitioner presented evidence reflecting that any payments to the Automobile Club beyond a date certain would bear finance charges, there is no evidence in the record as to when the payments were made or whether they included any amounts for finance charges. Accordingly, petitioner has failed to satisfy her burden of proof. Welch v. Helvering,supra;New ColonialIce Co. v. Helvering,supra; Rule 142(a). Deductions Concerning Employment as an Anesthetist
During 1978, petitioner was employed as an anesthetist. Because she claimed losses which exceeded her income as an anesthetist, petitioner did not claim deductions for expenses connected with her employment. Petitioner now claims to be entitled to deductions for expenses incurred for education, automobile mileage, and telephone. The parties stipulated that petitioner was entitled to $3,058.32 in expenses relating to employment for 1978. This amount consists of $2,439 for materials fees, $332.68 for dues and licenses, *260 and $296.64 for miscellaneous equipment. On brief, respondent concedes that petitioner is additionally entitled to $774.18 for mileage and $13.82 for telephone expenses (or $788 more than the $3,058.32 amount previously stipulated to by the parties). Petitioner testified that she attended two out-of-state training seminars in connection with her employment. She offered evidence reflecting lodging costs of $179.14 but provided no further documentary or testimonial evidence concerning the cost of meals or transportation. Petitioner testified that the fees for the seminars were paid for by her employer. Because no specific or generalized amounts are claimed either in the record or on petitionerhs return for food or transportation in connection with these seminars, we are limited to finding that petitioner's education expenses in connection with her employment to maintain and improve her skills as an anesthetist totaled $179.14 for 1978. During 1978, petitioner worked at five different locations on a regular basis as an anesthetist. Accordingly, she was required on some occasions to drive between two places of employment. *261 Ordinarily, transportation between one's residence and place of employment is considered a personal commuting expense and is not deductible. Commissioner v. Flowers,326 U.S. 465, 470-474 (1946). Transportation between jobs, job locations or businesses, however, is deductible. Curphey v. Commissioner,73 T.C. 766, 777 (1980). Although the parties stipulated to petitioner's locations of work and the distances between them, petitioner, at trial, disagreed with respondent's proposed distance calculation. Petitioner failed, however, to provide any further evidence or argument to refute respondent's calculation. Based upon the parties' stipulation and petitioner's testimony, we find that respondent's calculation of $774.18 (i.e., 4,554 miles between job or business locations at 17 cents a mile) represents petitioner's deductible mileage expense for 1978. Petitioner also argues that she is entitled to deduct 90 percent or $362 of expenditures in connection with the telephones located in petitioner's residences. Respondent contends that only the toll call portion of petitioner's telephone bills, which are to specific numbers identified as places of *262 employment, are deductible. Respondent calculated that petitioner's businesstype usage of the telephones was $13.82 for 1978. Based upon the entire record, and considering petitioner's interest in rental apartments and her employment at diverse locations, we find that she is entitled to deduct $132 of telephone expenses for 1978. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Deduction for Rental Expenses
Petitioner owned a four-unit apartment building in Norwalk, California, during 1978. Respondent, in his statutory notice, determined that only $3,981 of the $23,279 expenses petitioner claimed was allowable for 1978 and disallowed the remainder. After reviewing various documents, respondent agreed that petitioner was entitled to $9,436.49 (inclusive of the $3,981 reflected in the statutory notice) as expenses allowable in connection with petitioner's real property rentals. Following trial, respondent, on brief, conceded an additional $491.12 in expenses (in addition to the parties' stipulation of $9,436.49). There remains for our consideration seven items which petitioner continues to claim as deductible expenses in connection with her real property *263 rentals: (1) Payments to Jackman Yee for Services - Jackman Yee (Mr. Yee) was married to and divorced from petitioner prior to 1978. Petitioner and Mr. Yee testified to the effect that Mr. Yee managed petitioner's apartments.Mr. Yee resided in one of the four apartment units and paid $120 per month as rent while each of the other three apartments were rented for a monthly rate of $180. Petitioner testified that during 1978 she paid Mr. Yee $100 per month to manage, $10 per month to perform bookkeeping, and $1,500 to paint the apartment building. Both petitioner and Mr. Yee testified that petitioner paid these amounts in cash to Mr. Yee. Respondent contends that petitioner either did not pay these amounts or petitioner was merely financially supporting her ex-husband during 1978 and providing him a place to live. Despite respondent's argument that petitioner did not pay Mr. Yee to paint the apartment building, respondent has agreed that petitioner purchased and may deduct painting supplies and equipment exceeding $600. Further, while the parties agreed to expenses for gardners, upholstering, and plumbers, the parties did not agree to any amount for a painter. While there *264 is no evidence in the record that petitioner paid Mr. Yee for support or alimony under a court order or in connection with the Yee's former marital relationship, petitioner's testimony and demeanor reflect that she continues to rely on Mr. Yee for business matters despite their divorce. Therefore, it is likely that she did so during 1978. In view of the foregoing and because we find petitioner's testimony on this point to be credible, we find that petitioner paid Mr. Yee $110 per month to manage her apartment building and perform bookkeeping and that she paid Mr. Yee $1,500 to paint the apartment building. Accordingly, these payments are deductible as expenses in connection with the rental property for 1978. (2) Life Insurance Premiums - Petitioner contends that she is entitled to deduct $110.88 for life insurance premiums on her life. Mr. Yee is named as the beneficiary of that policy. Petitioner argues that the policy was intended to pay off outstanding debts against the apartment building or to pay for the apartment building. Based on the record in this case, we find the premiums for the life insurance policy are personal, nondeductible expenses and not connected sufficiently *265 to the business operation. Guglielmetti v. Commissioner,35 T.C. 668 (1961). (3) Telephone Charges - Petitioner paid the monthly telephone bills of $98.35 during 1978 for a telephone located in Mr. Yee's apartment which petitioner contends she is entitled to deduct because the telephone was used solely for business purposes. Respondent, on the other hand, concedes that only $11.23 of the telephone expenses concerning Mr. Yee's telephone are for business purposes. Based upon the entire record, we find that petitioner is entitled to $33 in telephone expenses attributable to Mr. Yee's telephone reflecting a reasonable allowance for those expenses incurred in connection with her employment or investment activity during 1978. Cohan v. Commissioner,supra.
(4) Newspaper Subscriptions - During 1978 petitioner paid $24 to the Los Angeles Times for delivery of the daily newspaper to her residence. She contends that this amount should be deductible. Petitioner has not carried her burden of showing these expenditures to be business or investment income oriented. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). *266 (5) Cost of Refrigerator - During March 1978 a refrigerator costing $794.95 was delivered to petitioner's new residence at Diamond Bar.Petitioner argues that at some later date she had the refrigerator moved to Mr. Yee's apartment to be used in connection with the rental property as a furnished apartment. The record on this point is hazy. Petitioner and Mr. Yee have not adequately accounted for the original delivery to one location or explained the coincidence of delivering the refrigerator to a new home and not intending that refrigerator to be used in the new residence. Further, if the refrigerator were used for income-producing purposes, it is not likely that the entire cost would be depreciable or deductible in one year. In any event, petitioner has failed to carry her burden of showing that the property was placed in service as a business or incomeproducing asset during 1978. Welch v. Helvering,supra; Rule 142(a). (6) Montgomery Ward Finance Charges - In addition to our previous discussion of finance charges, petitioner claims $40.76 in additional finance charges and respondent contends that the $40.76 is a part of the amount the parties have *267 already agreed to with respect to miscellaneous credit card charges. Based upon the entire record, we find that petitioner has not shown her finance charges exceed the $257 amount agreed to by the parties. (7) Carpet Depreciation - Petitioner contends that she expended $1,200 for carpeting sometime in late 1975 or early 1976. A copy of petitioner's 1976 income tax return reflects a $400 claim for depreciation attributable to $1,200 of carpeting with a three-year life in connection with the rental property. A copy of petitioner's 1977 income tax return, however, does not reflect any deduction with respect to depreciation for carpeting but does contain depreciation deductions for the building in connection with the rental property. Petitioner presented no checks or other documentary evidence reflecting the purchase, delivery or installation of the carpeting. The testimony of both petitioner and Mr. Yee was most unsatisfactory with respect to their recall of the details concerning the purchase of any carpeting especially when petitioner was able to produce canceled checks, invoices, and other documents establishing the cost and purchase of other assets during the period in question. *268 Petitioner has failed to carry her burden of establishing the cost basis of the carpeting, and, accordingly, no amount is allowed for depreciation attributable to the carpeting for the taxable year 1978. Welch v. Helvering,supra;Caxton Printers, Ltd. v. Commissioner,27 B.T.A. 1110 (1933); Rule 142(a). Claimed Operating Loss - Eun Hee Won Ton Restaurant
Petitioner's 1978 income tax return reflects $50,300 in expenses and $12,978 in income from the Eun Hee Won Ton Restaurant. Respondent disallowed the resultant $37,322 claimed operating loss in his statutory notice. Although petitioner reflected her claimed loss as though it resulted from income and expenses that occurred during 1978, she in fact sold the restaurant in 1977. Accordingly, we must determine whether a net operating loss existed for petitioner to carry over to 1978. Petitioner left the operation and financial management of the restaurant to Mr. Yee. Petitioner provided no testimony concerning the claimed loss. Mr. Yee's testimony was, at best, unclear and at times evasive. Mr. Yee made no distinction between expenses and capital assets and apparently employed a method *269 of accounting or bookkeeping where he claimed deductions for assets upon the sale of the business which had to some extent been depreciated. Further, the books and records maintained for the restaurant were incomplete and lacked sufficient information to determine the restaurant's correct income. It also appears from Mr. Yee's testimony that the income may have been understated and was reported from one set of books maintained by a bookkeeper, whereas the deductions were derived from a separate set of books maintained by Mr. Yee, even though the bookkeeper provided complete financial data including the expenses. In order to claim a loss on petitioner's 1978 return, she must first prove the loss occurred in 1977. Neither petitioner's or Mr. Yee's oral testimony was sufficient to explain the inadequacies in the record. Sonel Research & Development, Inc. v. Commissioner,T.C. Memo. 1975-235. Petitioner's books and records as maintained by Mr. Yee and her bookkeeper were incomplete and shown to be incorrect with respect to petitioner's income, expenses and capital items during 1977. In view of the foregoing, petitioner has not established a loss within the meaning *270 of section 172 that may be applied against her other years' income. Additionally, it should be noted that section 172 requires petitioner to apply any 1977 operating loss against the taxable years 1974, 1975, and 1976 unless petitioner had elected under section 172(b)(3) only to carry the loss forward. That election should have been made with petitioner's 1977 tax return but the record is void of any such election. In view of the foregoing, we find that petitioner has not sustained any loss that may be carried from 1977 to 1978. Section 6653(a) Addition to Tax - Negligence
Section 6653(a) provides an addition to the tax for the underpayment of tax attributable to negligence or intentional disregard of the rules and regulations. Petitioner's recordkeeping, reporting and bookkeeping methods, coupled with the substantial amount of unsubstantiated and inappropriately claimed deductions, clearly warrant the application of an addition to tax for negligence or intentional disregard of the rules and regulations. Watson-Moore Co. v. Commissioner,30 B.T.A. 1197 (1934). *271 To reflect the foregoing and concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. Rule references are to the Tax Court's Rules of Practice and Procedure.↩
2. Respondent, in his statutory notice, allowed $3,981 of the loss attributable to the rental building and then increased the allowance to $9,436.49.↩